UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**LEONARD MAYARD ET AL**     **CASE NO.  6:19-CV-00761**

**VERSUS**     **JUDGE JUNEAU**

**ST JUDE MEDICAL INC ET AL**     **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss Complaint filed by defendants St. Jude Medical, LLC and Pacesetter, Inc., ("defendants') [Doc. 8].  The motion is unopposed.  For the following reasons, IT IS RECOMMENDED that the motion to dismiss be GRANTED.

### I.     BACKGROUND

The instant lawsuit was filed directly in this Court and alleges injuries caused by defects in the St. Jude Riata and Riata ST leads (the "Leads"), which were allegedly manufactured by the defendants and incorporated into a cardiac defribrillator implanted into the plaintiff, Leonard Mayard, on April 5, 2006. Plaintiffs allege that the defendants violated their state and federal law duties of care to report known risks associated with the use of the Leads; failed to adequately advise and warn medical personnel and their patients about known defects in their

1

product; and engaged in deceptive marketing, sales, and other deceptive trade practices under both federal and state law.[1]

In the instant motion to dismiss, which is unopposed, defendants argue that the plaintiffs allege various claims that are barred by the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51, *et seq.* ("LPLA"), which provides the exclusive remedy for claims sounding in products liability. Defendants also argue the plaintiffs' claims that are cognizable under the LPLA are prescribed, as the Complaint was filed more than one year after the claims accrued. Moreover, defendants argue the plaintiffs' claims are expressly preempted by the Medical Device Amendments of 1976, 21 U.S.C. §360K(a), as interpreted by the Supreme Court in *Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008), because they seek to impose state-law requirements on medical devices subject to premarket approval that are different from, or in addition to, the federal requirements imposed by the U.S. Food and Drug Administration. Finally, defendants argue plaintiffs' claims fail to allege a plausive claim for relief under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433, 570 (2007) and must, therefore, be dismissed.

---

[1] Plaintiffs allege the Leads were manufactured by St. Jude and Pacesetter. Plaintiffs also allege Pacesetter operates a wholly owned subsidiary of St. Jude Medical, Inc., and that Pacesetter holds the trademark for the Riata Leads.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from

the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

"Although prescription is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint." *Cranner v. Coletti*, 2014 WL 1407328, at *2 (E.D. La. 2014), *citing Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997); *Hilbun v. Goldberg*, 823 F.2d 881, 884 (5th Cir. 1987); *accord, e.g.*, *Tatum v. Am. Red Cross*, 2007 WL 3256591, at *2 (W.D. La. 2007) ("When a successful affirmative defense such as prescription appears on the face of the pleadings, dismissal under Federal Rule of Civil Procedure 12(b)(6) may be appropriate."), *aff'd sub nom. Tatum v. Police Jury of Calcasieu Par.*, 302 F. App'x 273 (5th Cir. 2008).

Similarly, "[i]f a state claim is preempted, it must be dismissed pursuant to Rule 12(b)(6)." *GlobeRanger Corp. v. Software AG*, 2011 WL 3586420, at *2 (N.D. Tex. 2011), *rev'd on other grounds*, 691 F.3d 702 (5th Cir. 2012); *accord, e.g.*, *Drake v. Malouf*, 1999 WL 1007642, at *3 (N.D. Tex. 1999) (claims that "are preempted … must be dismissed"); *Maslar v. Johnson & Johnson Prof'l, Inc.*, 1996 WL 162302, at *3 (E.D. Pa. 1996) (if a "claim is preempted," it "must be dismissed").

### B. Analysis

As an initial matter, the defendants argue most of the plaintiffs' claims alleged in the Complaint are barred by the LPLA. The defendants' argument is well-grounded in law and fact. Under Louisiana law, "[t]he LPLA 'establishes the exclusive theories of liability for manufacturers for damage caused by their products.'" *McLaughlin v. GlaxoSmithKline, LLC*, 2014 WL 669349, at *2 (W.D. La. 2014), *quoting* La. Stat. Ann. §9:2800.52); *accord, e.g.*, *McBride v. Medtronic, Inc.*, 2013 WL 3491085, at *5 (W.D. La. 2013); *Cooper v. Wyeth, Inc.*, 2010 WL 2653321, at *1 (M.D. La. 2010). Accordingly, "'[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in'" the LPLA. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012), *quoting* La. Stat. Ann. §9:2800.52; *accord, e.g.*, *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 262 (5th Cir. 2002); *McLaughlin*, 2014 WL 669349, at *2.

To state a claim under the LPLA, a plaintiff must allege facts that, if true, would show that the product in question was "unreasonably dangerous." La. Stat. Ann. §9:2800.54(a). Under the LPLA, "[a] product is considered unreasonably dangerous in only four circumstances." *Cooper*, 2010 WL 2653321, at *1. In particular, "[a] plaintiff may prove that a product is 'unreasonably dangerous' only

5

by establishing that it is so: (1) in construction or composition; (2) in design; (3) due to inadequate warning; or (4) due to nonconformity to an express warranty." *McLaughlin*, 2014 WL 669349, at *2, *citing* La. Stat. Ann. 9:2800.54(B)(1–4)); *accord, e.g.*, *Cooper*, 2010 WL 2653321, at *1; *McNeely v. Danek Med., Inc.*, 1999 WL 1117108, at *2 (W.D. La. 1999). These are "[t]he only theories of liability available to the plaintiffs." *Francis v. GRT Utilicorp, Inc.*, 2013 WL 12203815, at *4 (W.D. La. 2013). "Under the plain language of the LPLA, no other claims are permitted." *Id.*

Thus, in the instant matter, to the extent the plaintiffs' claims sound in anything other than manufacturing defect, design defect, inadequate labeling, or breach of express warranty, they are "not cognizable under the LPLA and must be dismissed." *McBride*, 2013 WL 3491085, at *4. Considering the foregoing, the undersigned finds the plaintiffs' negligence claims (Counts 2, 3, 4 and 10), implied-warranty claims (Counts 6, 7, and 8), claim for consumer fraud and unfair or deceptive trade practices (Count 9), claim for punitive damages (Count 11), and claim for medical monitoring (Claim 12) must be dismissed as barred by the LPLA. *See, e.g.*, *McLaughlin*, 2014 WL 669349, at *3 (dismissing claims for negligence, negligence *per se*, fraud, misrepresentation, and punitive damages as "beyond the scope of [plaintiff's] exclusive remedy under the LPLA"); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 662 (E.D. La. 2014) (dismissing negligence claim because

"[t]he LPLA does not provide causes of action for negligence" and unfair-trade practices claim because "the LPLA bars plaintiffs from maintaining an action under the [Louisiana Unfair Trade Practices Act]"); *Cooper*, 2010 WL 2653321, at *2 (dismissing "claims based upon Louisiana Unfair Trade Practices and Consumer Protection Law, fraud, negligence, negligent misrepresentation, misrepresentation, and breach of implied warranty because such claims are outside the permissible scope of the LPLA").

The only remaining claims are the plaintiffs' claims for manufacturing defect (Count 1) and design defect (Count 5), as well as the claim for attorneys' fees under the LPLA. As explained below, the foregoing claims must be dismissed as prescribed.

"Delictual actions are subject to a liberative prescription of one year." La. Civ. Code art. 3492. "The one year prescriptive period applies to all delictual actions including those brought pursuant to the [LPLA]." *Denoux v. Vessel Mgmt. Servs., Inc.*, 964 So. 2d 1081, 1084 (La. App. Ct. 2007), *aff'd in relevant part, vacated in part,* 983 So. 2d 84 (La. 2008); *accord Jenkins v. Bristol-Myers Squibb Co.*, 689 F. App'x 793, 795 (5th Cir. 2017) ("actions brought under the LPLA are subject to a one year prescriptive period").

The prescriptive period "commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is

7

the victim of a tort." *Guillot v. Doughty*, 142 So. 3d 1034, 1046 (La. App. 1st Cir. 2014). Thus, "[a] prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same." *Campo v. Correa*, 828 So. 2d 502, 511 (La. 2002); *accord, e.g.*, *Jones v. Honeywell Int. Inc.*, 295 F. Supp. 2d 652, 658 (M.D. La. 2003) ("The prescriptive period begins to run … when the injured party has actual or constructive knowledge of the facts that would entitle her to bring suit."). "An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention or put a reasonable person on guard to call for inquiry." *Martine Mgmt., Inc. v. Caston*, 900 So. 2d 301, 305 (La. App. 2nd Cir. 2005); *accord, e.g.*, *McLaughlin v. GlaxoSmithKline, L.L.C.*, 601 F. App'x 312, 314 (5th Cir. 2015). A party on constructive notice is deemed to have "knowledge or notice of everything to which a reasonable inquiry may lead." *Campo*, 828 So. 2d at 511; *see also Martinez Mgmt.*, 900 So. 2d at 305 ("a plaintiff is deemed to know what he could have learned by reasonable diligence."). Thus, "'the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim.'" *McLaughlin*, 601 F. App'x at 314, *quoting Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 300 (5th Cir. 1999), *citing Terrel v. Perkins*, 704 So. 2d 35, 39 (La. 1st Cir. 1997).

In their Complaint, the plaintiffs allege that Leonard was implanted with Riata Leads in 2005 or 2006. They further allege that Leonard subsequently "began to have symptoms of erratic heart rhythms, periods of physical weakness and the pain of electric shock episodes convulsing his heart and chest muscles." According to plaintiffs, "these symptoms began to increase in frequency and intensity" over "a period of years." On plaintiffs' own account, these alleged symptoms "continued through" Leonard's subsequent "operation to remove the right ventricular lead," up to the time Leonard underwent "invasive surgery to extract the defective Riata Lead," which occurred on June 4, 2018. Thus, plaintiffs' own allegations make clear that the plaintiffs had actual knowledge of Leonard's alleged injuries, including "electric shock episodes," for "a period of years" prior to, and certainly no later than, his June 4, 2018 surgery. Indeed, as the plaintiffs have alleged, Leonard's June 4, 2018 surgery was performed "after" Leonard had been "diagnosed with" a "malfunctioning right ventricular … lead[]." That diagnosis was confirmed in the operative reports from April 30, 2018 as well as the final report from the operation performed on June 4, 2018, both of which allegedly indicate that the Lead removed from Leonard was a recalled Riata lead which was determined to have externalization of the [right ventricular] lead in the form of wiring protruding from the insulation surrounding it.

Considering the foregoing, and based upon the plaintiff's own allegations, by June 4, 2018, the plaintiffs "possesse[d] information sufficient to incite curiosity, excite attention or put a reasonable person on guard to call for inquiry" into the Lead. *Martinez Mgmt.*, 900 So. 2d at 305. Accordingly, the plaintiffs are "deemed to know what [they] could have learned by reasonable diligence" as of June 4, 2018, and the plaintiffs' Complaint makes clear that they could have learned everything that they allege in their Complaint by June 4, 2018, and within a year after that date, had they exercised reasonable diligence.

Based on the foregoing the undersigned concludes the plaintiffs had actual and/or constructive knowledge of their manufacturing and design defect claims on June 4, 2018. The records shows that the plaintiffs did not file the instant lawsuit until June 17, 2019, more than two weeks after their claims prescribed. Because it appears the plaintiffs' claims have prescribed on the face of the complaint, the plaintiffs have the burden to establish facts that would have the effect of interrupting or avoiding prescription. *Evans v. Int'l Paper Co.*, 2011 WL 1898912 at *9 (W.D. La. Mar. 24 2011) (MJ Hayes), *report and recommendation adopted*, 2011 WL 1930679 (W.D. La. May 19, 2011) (J James). Not only have the plaintiffs not responded to the instant motion to controvert the arguments of the defendants, they have expressly pled facts that the plaintiffs had actual and/or constructive knowledge of their manufacturing and design defect claims more than one year before they filed

10

suit. For this reason, the undersigned concludes that the plaintiff's Claims 1 and 5 are prescribed and must be dismissed.[2]

### III. CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the unopposed Motion to Dismiss Complaint filed by defendants St. Jude Medical, LLC and Pacesetter, Inc. [Doc. 8], being well-grounded in law and fact, be GRANTED, and that all claims against these defendants, including the claim for attorneys' fees under the LPLA, be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

---

[2] Because the undersigned concludes all of the plaintiffs' claims are clearly subject to dismissal as either preempted by the LPLA or prescribed, it is unnecessary to discuss the defendants' alternative argument that all claims are also subject to dismissal as preempted by federal law.

by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 10th day of December, 2019 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE